IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:13CV213-RJC-DSC

| | |
|---|---|
| REBECCA CARROLL, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (document #11) and "Memorandum in Support ..." (document #12), both filed February 7, 2014, and Defendant's "Motion for Summary Judgment" (document #17) and "Memorandum in Support ..." (document #18), both filed May 28, 2014. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Judgment on the Pleadings be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on December 9, 2013, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

# I. PROCEDURAL HISTORY

On March 6, 2009, Plaintiff filed an application for a period of disability and Social Security disability insurance benefits ("DIB") alleging that she was unable to work as of July 1, 2008. (Tr. 97).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing which was held on July 15, 2010. (Tr. 130). On August 2, 2010, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 99). Plaintiff sought review by the Appeals Council, and the claim was remanded on November 8, 2011. (Tr. 113). A second hearing was held on December 10, 2012.

On January 31, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 8-27). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 1, 2008. (Tr. 13). The ALJ also found that Plaintiff suffered from fibromyalgia ("FM"), asthma and obesity, which were severe impairments within the meaning of the regulations (Tr. 13) but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 21). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to "perform medium work … except with no concentrated exposure to extreme heat or to fumes, odors, gases, poor ventilation, etc."[3] (Tr. 22-25). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. However, he concluded that Plaintiff's testimony

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]Medium work involves occasionally lifting or carrying up to fifty pounds and frequently lifting or carrying up to twenty-five pounds. 20 C.F.R. § 404.1567(c).

2

concerning the intensity, persistence and limiting effects of her symptoms was not entirely credible, and that those symptoms would not preclude work as described in the assessed RFC. (Tr. 25). Based upon this RFC and the testimony of a Vocational Expert ("V.E."), the ALJ found that Plaintiff could perform her past relevant work as a cashier/stocker, school bus driver or cleaner. (Tr. 25-26).

Assuming in the alternative that Plaintiff could not perform her past relevant work, the ALJ shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the V.E. identified jobs (cleaner/janitor, sandwich maker, and grocery bagger) that Plaintiff could perform. The V.E. stated that 3,300 of these jobs existed in North Carolina. (Tr. 26-27).

For both of those reasons, the ALJ found Plaintiff capable of performing work existing in significant numbers in the national economy, and concluded that she was not disabled during the relevant period. (Tr. 28).

On April 1, 2013, Plaintiff filed a Request for Review by the Appeals Council.

By notice dated May 30, 2013, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on July 25, 2013. She assigns error to the ALJ's assessments of the severity of her impairments, her RFC, the opinions of her treating and examining physicians, and her obesity. See Plaintiff's "Memorandum in Support ..." 1, 4-12 (document #12). The parties' cross- Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the

4

outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" at any time.[4] Plaintiff argues that the ALJ erred in assessing her RFC. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. It is the claimant's burden, however, to establish her RFC by demonstrating how those impairments impact her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

In September 2009, state agency physician Dr. Dorothy Linster opined that Plaintiff

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

could perform medium work. (Tr. 708). Dr. Linster found that Plaintiff had no significant limitations with her ability to stand, walk, sit, push, or pull (Tr. 708); no climbing, balancing, or other postural limitations (Tr. 709); and no handling, fingering, or other manipulative limitations. (Tr. 710). Dr. Linster stated that Plaintiff should avoid concentrated exposure to extreme heat and respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation. (Tr. 711). Dr, Linster did not find any other significant limitations. (Tr. 709-11). The ALJ gave "great weight" to Dr. Linster's opinions (Tr. 24) and adopted those limitations in his RFC finding. (Tr. 22).

The ALJ properly relied upon this opinion since state agency physicians are "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Social Security Act." 20 C.F.R. § 404.1527(e)(2)(i); see also 20 C.F.R. § 404.1527(c)(6). And as the ALJ correctly stated, this opinion is "supported by medical signs and findings" and is "consistent with other medical evidence of record" (Tr. 24); see 20 C.F.R. § 404.1527(c)(4).

In June 2009, state agency physician Dr. Robert Gardner provided an opinion that was less favorable to Plaintiff with respect to her ability to tolerate extreme heat. Otherwise his opinion was identical to Dr. Linster's. (Tr. 16, referring to Tr. 685-92).

As the ALJ noted, Plaintiff's treating physician Dr. Elizabeth Peverall repeatedly used the term "conservative" to describe the appropriate level of treatment that Plaintiff should pursue. SSR 96-7p, available at 1996 WL 374186, at *7, provides that an adjudicator may properly discount a claimant's allegation that she is disabled where "the level . . . of treatment is inconsistent with the level of complaints." See also Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that

condition is highly probable of the . . . credibility" of complainant's allegation that she is disabled). Dr. Peverall examined Plaintiff in June 2009 and stated that since there were no neurological deficits, she would pursue "conservative management," to include back exercises, walking, and body mechanics. (Tr. 14, referring to Tr. 762). Dr. Peverall examined Plaintiff in April 2010 and again recommended only "conservative treatment." (Tr. 16, referring to Tr. 724). In October 2010, Dr. Peverall recommended stretching and gentle exercise. (Tr. 16-17, referring to Tr. 853; see also Tr. 634, 767, 773, 806).

The ALJ discussed the medical evidence that was consistent with Dr. Linster's opinion and the RFC. The ALJ correctly noted that diagnostic imaging indicated that Plaintiff's musculoskeletal impairments were relatively mild. (Tr. 14, 17, 18). The ALJ noted that a September 2005 MRI revealed only mild degenerative disc changes to Plaintiff's spine, (Tr. 14, referring to Tr. 537), and October 2011 x-rays showed only minimal degenerative changes (Tr. 17, referring to Tr. 932). X-rays from August 2007 revealed only mild degenerative disease in Plaintiff's left knee. (Tr. 14, referring to Tr. 421). X-rays from April 2011 continued to reveal only mild degenerative changes with no evidence of fracture or dislocation. (Tr. 17, referring to Tr. 830). X-rays from May 2012 revealed no acute fracture or dislocation, no significant effusion, and only mild to moderate degenerative changes. (Tr. 18, referring to Tr. 995).

X-rays of Plaintiff's right knee in March 2012 revealed only mild degenerative changes with no evidence of fracture, dislocation, or acute bony abnormality. (Tr. 18, referring to Tr. 946).

Consultative examiner Dr. Amy Rehfield, saw Plaintiff in October 2007 and reported that she ambulated with a normal gait (Tr. 401), appeared stable at station and comfortable in the

7

supine and sitting positions. (Tr. 401). Examination of her knees revealed no tenderness, redness, or warmth (Tr. 401). Plaintiff had no fluid, laxity, or crepitus of the knees, ankles, or feet (Tr. 402); her muscle strength was normal at 5/5 in both upper and lower extremities (Tr. 402); there was no evidence of atrophy by measurement of the upper extremity and lower extremity circumferences (Tr. 402); and her wrists were not tender. (Tr. 401). Her hands were not red, warm, or swollen and had no nodules or atrophy. (Tr. 401). Plaintiff could make a fist bilaterally (Tr. 401); her grip strengths by manual motor testing were normal and graded 5/5 bilaterally (Tr. 401); and range of motion of the joints of the fingers of both hands was normal. (Tr. 402).

Dr. Peverall examined Plaintiff in June 2009 and reported that she had no neurological deficits. (Tr. 14, referring to Tr. 762). Dr. Peverall found that Plaintiff had 5/5 strength and normal sensation to light touch in both her upper and lower extremities. (Tr. 762; see also Tr. 756). Dr. Peverall examined Plaintiff in March 2010 and reported that she still had a normal gait. (Tr. 16, referring to Tr. 738).

Dr. Daniel Nguyen examined Plaintiff in September 2012 and reported that she had 5/5 strength in her bilateral upper and lower extremities (Tr. 19, referring to Tr. 1040).

Doctors Peverall and Nguyen as well as other medical providers examined Plaintiff on multiple occasions and reported that she did not appear to be in any significant distress. (Tr. 14, 15 & 17; referring to Tr. 516, 762, 838, 1040; see also Tr. 557, 567, 572, 575, 576, 579, 581, 583, 585, 587, 589, 590, 599, 628, 641, 651, 656, 659, 660, 663, 665, 667, 669, 671, 673, 675, 678, 683, 724, 727, 730, 734, 738, 742, 744, 748, 756, 759, 764, 782, 789, 833, 835, 841, 844, 850, 853, 856, 858, 862, 887, 891, 963, 986, 1004, 1044, 1047, 1051, 1054, 1066, 1072, 1133).

Plaintiff argues that the ALJ did not properly consider her obesity. SSR 02-1p, available

8

at 2002 WL 34686281, at * 3, provides that the ALJ must consider a claimant's obesity in determining whether, inter alia, her impairments prevent her from doing work that exists in significant numbers in the national economy. SSR 02-1p further provides that the combined effects of obesity with other impairments may be greater than might be expected without obesity. Id. at *6. The ALJ properly considered Plaintiff's obesity pursuant to SSR 02-1p, and substantial evidence supports the conclusions that he reached. The ALJ expressly refers to Plaintiff's obesity more than a dozen times (Tr. 11, 13, 14, 15, 16, 17, 18, 19, 20, 23; referring to Tr. 66, 401, 402, 516, 558, 835, 838, 846, 850, 853, 958, 1040). The ALJ classified Plaintiff's obesity as a "severe" impairment that "significantly limits [Plaintiff's] ability to perform basic work activities." (Tr. 12-13). The ALJ found that "the combined effects of [Plaintiff's] obesity with her other impairments further erodes [Plaintiff's] job base," (Tr. 23).6 The ALJ's finding that Plaintiff must avoid concentrated exposure to extreme heat and respiratory irritants was related to her obesity. (Tr. 22); see also SSR 02-1p, available at 2000 WL 628049, at *5-6.

This Court has held that remand was not warranted where the state agency doctors were aware of the claimant's obesity and the adjudicator adopted their conclusions. McKinney v. Astrue, No. 1:11-cv-00199, 2012 WL 6931344, at *3 (W.D.N.C. Dec. 11, 2012), adopted by 2013 WL 300822, at *3 (Jan. 25, 2013); see also Forte v. Barnhart, 2004 WL 1687001, at **4 (8th Cir. July 29, 2004). As stated previously, the ALJ adopted the opinion of state agency physician Dr. Linster, who is a "highly qualified . . . expert[]" in evaluating medical evidence under the Act. (Tr. 22 & 24, referring to Tr. 707-14). Dr. Linster specifically recited Plaintiff's height and weight, -- the two data points that are used to determine whether a person is obese.[5]

---

[5] Citing a record from March 2009, Dr. Linster recited that Plaintiff was 66 inches tall and weighed 265 pounds (Tr. 714, referring to Tr. 516). According to a calculator available on the National Institutes of Health website, an adult

9

Dr. Linster opined that Plaintiff's impairments – including her obesity – did not give rise to any limitations beyond what the ALJ included in his RFC finding (compare Tr. 22 with Tr. 707-14).

Accordingly, the ALJ's treatment of Plaintiff's obesity is supported by substantial evidence.

Plaintiff next argues that the ALJ failed to properly consider Dr. Peverall's opinion. Dr. Peverall opined that Plaintiff's limitations exceeded those set forth in the RFC finding concerning her ability to lift, sit, stand, walk, use her hands and feet, engage in postural activities, and tolerate certain environmental conditions. (Tr. 715-19).

The Fourth Circuit has held that a treating physician's opinion need not be accorded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Dr. Peverall provided her opinion by checking items on a form. A "checklist opinion" is "entitled to relatively little weight." Berrios Lopez v. Sec'y of Health & Human Servs., 952 F.2d 427, 431 (1st Cir. 1991). See also 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion.

---

with that height and weight is obese, with a Body Mass Index ("BMI") of 42.8. http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm.

The better an explanation a source provides for an opinion, the more weight we will give that opinion"); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 & 32 (2d Cir. 2004) (checklist opinions are "only marginally useful" and "not particularly informative"); Craig, 76 F.3d at 590 (physician's opinion that is not supported by objective evidence should be accorded significantly less weight); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) (checklist forms "unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence") (citing Third Circuit authority).

As this Court has explained, an ALJ's evaluation of an opinion provided by a treating source "will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular [treating] opinion." McDowell v. Astrue, No. 3:11-cv-652-RJC-DSC, 2012 WL 4499336, at *3 (W.D.N.C. Aug. 2, 2012) (Cayer, Mag. J.) (citing Christian v. Apfel, No. 98-1673, 168 F.3d 481 (4th Cir. Dec. 31, 1998)), adopted by 2012 WL 4499283 (Sept. 28, 2012) (Conrad, J.). The ALJ provided adequate reasons, and substantial evidence supports his decision to accord little weight to Dr. Peverall's opinion.

The ALJ found that Dr. Peverall's opinion was inconsistent with the objective findings in her own contemporaneous treatment notes. (Tr. 24). See, e.g., Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir. 2009) (ALJ entitled to discount opinion of treating physician on ground that it is inconsistent with physician's own treatment notes); Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007) (ALJ properly refused to credit assessment by treating physician because it was inconsistent with physician's own treatment notes); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (ALJ properly discredited opinions of two treating physicians

because they were inconsistent with physicians' own treatment notes).

As discussed above, Dr. Peverall reported in her contemporaneous treatment notes that Plaintiff did not appear to be in any distress, had 5/5 strength and normal sensation to light touch in both her upper and lower extremities, and warranted only conservative treatment. (Tr. 14, 16, 17, 24; referring to Tr. 516, 724, 762, 853; see also Tr. 572. 575, 579, 581, 583, 585, 587, 589, 590, 628, 634, 656, 659, 663, 665, 667, 669, 671, 673, 675, 678, 683, 727, 734, 738, 742, 748, 756, 759, 764, 782, 789, 806, 833, 841, 844, 850, 856, 858, 862, 1051, 1054, 1066, 1072).

Dr. Linster – a "highly qualified . . . expert[]" in evaluating medical evidence under the Act –opined that Plaintiff did not have any limitations beyond those contained in the RFC finding. (Tr. 707-14). Dr. Linster provided her opinion in late September 2009 (Tr. 707-14), only two months prior to Dr. Peverall's opinion in late November 2009. (Tr. 715-21, 740-42, 746-49). Dr. Linster reviewed virtually all of the prior treatment notes from Dr. Peverall.

The ALJ further states that he rejected Dr. Peverall's opinion because it "departs substantially from the rest of the evidence of record." (Tr. 24). As discussed above, this conclusion is supported by substantial evidence, including Doctors Linster and Gardner's expert opinions. Doctors Rehfield and Nguyen and other medical providers examined Plaintiff on multiple occasions and reported that she did not appear to be in any significant distress. (Tr. 14, 15 & 17; referring to Tr. 516, 762, 838, 1040; see also Tr. 557, 567, 572, 575, 576, 579, 581, 583, 585, 587, 589, 590, 599, 628, 641, 651, 656, 659, 660, 663, 665, 667, 669, 671, 673, 675, 678, 683, 724, 727, 730, 734, 738, 742, 744, 748, 756, 759, 764, 782, 789, 833, 835, 841, 844, 850, 853, 856, 858, 862, 887, 891, 963, 986, 1004, 1044, 1047, 1051, 1054, 1066, 1072, 1133).

As this Court has said, "an ALJ is not tasked with the 'impossible burden of mentioning

every piece of evidence' that may be placed into the Administrative Record." Carringer v. Colvin, No. 2:13-cv-00027, 2014 WL 1281122, at *7 (W.D.N.C., March 27, 2014). Here, the ALJ states that he carefully considered "all the evidence" and the "entire record." (Tr. 12, 13, 22, 23). Citing similar statements, the South Carolina District Court recently emphasized that it is proper to "take the ALJ at his word." Johnson v. Colvin, No. 2:12-cv-01475, 2013 WL 5139122, at *11 (D.S.C. July 29, 2013), adopted by 2013 WL 5139122 (Sept. 11, 2013).

Plaintiff's final argument is that the ALJ improperly omitted carpal tunnel syndrome ("CTS"), degenerative disc disease ("DDD"), and degenerative joint disease of the knees ("DJD") from the list of plaintiff's "severe" impairments. Any error at step two is harmless where the adjudicator proceeds to step three. Stacey v. Astrue, No. 1:09-cv-00181, 2011 WL 841356, at *3 (W.D.N.C. Jan. 28, 2011) ("Declining to explicitly list [claimant's] paranoia as a severe impairment was harmless error because the ALJ found that [claimant] had [other] severe impairments . . . . Such findings advanced the ball in the sequential evaluation process because when an ALJ finds one severe impairment, all impairments both severe and non-severe must be considered in determining RFC."), adopted by 2011 WL 873463 (March 7, 2011).

The ALJ also expressly stated that in formulating his RFC finding, he must "consider all of [Plaintiff's] impairments, including impairments that are not severe." (Tr. 13). Moreover, the ALJ discussed Plaintiff's CTS (Tr. 17-19), DDD (Tr. 14, 21, 23), and her DJD (Tr. 14). There is substantial evidence that supports the RFC finding, including diagnostic imaging indicating that Plaintiff's DDD and DJD were relatively mild (Tr. 14, 17 & 18; referring to Tr.421, 537, 830, 932, 946, 995) and Dr. Rehfield's unremarkable findings concerning Plaintiff's hands and wrists (Tr. 14-15, referring to Tr. 401-02). Dr. Linster was also aware of Plaintiff's CTS, DDD and

DJD. As discussed above, the ALJ adopted her opinion that those impairments did not cause any limitations beyond those set forth in the assessed RFC. (Tr. 22 & 24, referring to Tr. 707-14).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57. Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #11) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #17) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the

right to de novo review by the District Judge.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989).  Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED AND ORDERED**.

Signed: June 2, 2014

David S. Cayer
United States Magistrate Judge